**BRANDTJEN & KLUGE, Inc. v. TARTER et al.**

No. 15211.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 26, 1951.

Rehearing Denied Feb. 23, 1951.

552

Allen, Gambill & Gambill, and Judge Gambill, all of Fort Worth, for appellant.

James P. Cogdell and Joseph F. Greathouse, both of Fort Worth, for appellee.

HALL, Justice.

Appellant Brandtjen & Kluge, Inc. sued appellee Bishop H. Tarter individually, and d/b/a Globe Printing Company, in the District Court of Tarrant County, Texas, for judgment and foreclosure of a chattel mortgage executed by appellee to appellant for part payment on a printing press. Appellee defended by way of cross action to cancel said notes and mortgage and for recovery of cash payments made prior to installation; for cost of installation and for loss of business due to the machine being totally defective.

The trial court entered judgment for appellee supported by jury findings as follows:

(1) That the Kluge Press purchased by appellee from appellant was so defective it could not be made to register accurately with the paper stock in good condition.

(2) That failure of said press to register properly was not caused by appellee's improper handling.

(3) That during the period of time said press was in appellee's shop he lost profits from his business.

(4) The amount of profits so lost by appellee was $250.00.

(5) That appellee expended the sum of $50.00 for electrical installation of said press.

Appellant's appeal consists of 25 points.

The first nine points are grouped by appellant for discussion, and contain, in the main, contention that trial court erred in overruling its motion for judgment non obstante veredicto. That said trial court failed to give effect to limitation contained in the warranty contract; trial court erred in refusing to give appellant a new trial because there was no evidence of fraud nor of total failure of consideration; nor of partial failure of consideration; nor of breach of warranty; that said trial court erred in awarding appellee judgment because the proof, as matter of law, reflects that appellee retained and used the press with full knowledge of its condition; that appellee, at most, only proved a partial failure of consideration or a partial breach of warranty for which damages would be the difference in values and not for cancellation or rescission.

A review of the statement of facts reveals that in 1946 appellee signed a contract with appellant to purchase from appellant a Kluge Automatic Press, 12 x 18, and at said time he advanced $50.00 to appellant. When the press was delivered in 1948, he paid a further sum of $557.00. When appellee was notified the press had been shipped from the factory, he sold his press which was doing the printing work contemplated to be performed by the new one. When the press was delivered, appellant employed a man by the name of Heckler to erect said machine under the terms of their agreement. Appellee testified many times, that result of all tests made after installation, was that the machine would not operate. It would not register accurately. While trying to register, it would pick up the paper, but would not lay it down in the proper place, and sometimes would scatter it over the floor. He hired two or three different expert machine operators who had experience in operating the same kind and character of machine, but they could not make it properly operate.

The undisputed evidence shows that the installation was completed on June 18, 1948; on June 24, 1948, appellee wrote appellant a rather lengthy detailed letter of explanation, a portion of which is as follows:

"We finally received the Kluge Press, and the erector came and put it together but could not make it feed. It still will not feed and we are worse off than we were before we put it in, as we sold one of our Miller when we received notice from the freight company that the Kluge Press was here * * *.

"We have tried to run several jobs on the press and have had no luck either with the pick up, delivery or register, in fact there is something wrong with the press that even the erector does not know. So after giving it every trial that we could give it, we have washed it up and are leaving it to your disposal.

"We know from other people that have Kluge presses that they can get production and register on them, but the same men who run them, are stumped on this one."

We find the above evidence is sufficient to support the trial court's judgment for rescission of the contract. Appellant's contention that the failure of said machine to operate constitutes a mere breach of warranty to furnish repairs is not well founded. Its guarantee as to operation is as follows:

"Kluge Automatic Press Guarantee

"We guarantee that the Kluge Automatic Press manufactured by us will handle any flat stock from tissue paper to eight-ply cardboard as well as envelopes (made-up or die-cut) with accurate register, provided that stock is not electrified or in otherwise bad condition.

"Brandtjen & Kluge, Inc., Warranty

"We warrant the goods of our manufacture for one year, this warranty being limited to the furnishing at our factory of such parts as shall, under normal use and service, appear to us to have been defective in material and workmanship.

"This warranty is limited to the shipment to the purchaser without charge, except for transportation, of the part or parts intended to replace the part or parts claimed to have been defective and which upon their return to us for inspection, we shall have determined were defective, and provided the transportation charges for the parts so returned have been prepaid. We make no warranty whatever in respect to hoses, counters, electric equipment nor any equipment not of our manufacture.

"The condition of this warranty is such that if the goods to which it applies are altered or repaired outside of our factory, our liability under this warranty shall cease.

"The purchaser understands and agrees that no warranty of the goods of our manufacture is made or authorized to be made by the Company other than herein above set forth."

The above guarantee of appellant that said press would register accurately according to said warranty is not susceptible to provisions in the succeeding paragraphs supra relative to replacement of defective or broken parts. Said provisions may supplement but certainly do not supersede or nullify the warranty, previously cited, pertaining to operation and therefore we find that appellant's obligation lies deeper than mere liability limited to replacement of parts.

Since the testimony reveals that operation of said machine was unsatisfactory from its installation and that appellant's representative, Heckler, its special erector, and other experts familiar with such machine were unable to make it operate continuously within a reasonable degree of efficiency, we overrule appellant's contention. We have construed the provisions of the warranty and written contract between the parties as a whole in order to ascertain their true meaning as under the law we should do. See St. Mary's Oil Engine Co. v. Allen-Morrow Co., Tex.Civ. App., 20 S.W.2d 266, 271. As stated in said case, "Such construction is in accord with the further rule that a contract should be construed most strictly against the party who prepared it and tendered it to the other for acceptance or rejection."

■ Appellant contends that appellee, by keeping the machine in his possession, waived his right of rescission. Such right of rescission can easily be waived by the person entitled to exercise it. The law requires punctual notice be given to the opposite party. It is also settled that a buyer will have ratified the contract, thereby waiving his right of rescission, whenever it appears that after discovery of his right to rescind he continues to use the property in question. 37 Tex.Jur., Sec. 246, page 542; 77 A.L.R. page 1178–1179 (46 Am. Jur. Sec. 765, page 895). Testimony in the instant case reveals that appellee notified appellant within four days after the machine was installed that the same was inoperative; that he had prepared the machine for their disposal; that appellee used the machine only for the purpose of testing it in trying to make it work. We find, under such facts, appellee did not waive his right of rescission.

■ It is also noted in the contract that "Purchaser agreed to make all necessary electrical connections and pay the expenses thereof and to furnish all help necessary to erect above mentioned equipment." Appellant argues that it was erroneous for appellee to recover amount which he expended for electrical installation. The law permits recovery of such consequential expenses that were within contemplation of the parties at time the trade was consummated. See 37 Tex.Jur. page 540, Sec. 245. We find, under the facts in this case, it was equitable for appellee to recover the amount which he expended for electrical installation, etc.

■ Appellant strenuously contends in its twelfth point of error that appellee should not be permitted to recover for rescission and at the same time for damages done to his business for failure of the machine to operate. We find this contention to be correct. See 37 Tex.Jur. page 541, Sec. 245, Page 514, Sec. 235. The trial court erred in rendering judgment in the sum of $250.00 for such damage and we deduct said amount from appellee's judgment.

Appellant argues in some of its points that the ultimate issue was not submitted to the jury in special issues No. 1 and No. 2 in that the ultimate issue was whether or not the machine was worthless instead of whether or not same was so defective that it would not register accurately as submitted by the Court. It contends that such submission inquired as to whether there was a defect and did not touch upon the question whether or not the press was worthless; that a mere defect is not a ground for rescission, and cites Wright v. Davenport, 44 Tex. 164, wherein the Court adopted the following rule from Story on Contract as discussed in 37 Tex.Jur. page 527, Sec. 240.

" 'When there is no fraud, and the warranty goes to the fitness of the article, and it proves wholly unsuitable, or to the identity of the article, and it proves another thing from that for which it was sold, it may be returned. * * * But if the warranty goes to the degree of fitness or to quality, and it proves to be of an inferior quality or fitness, the goods cannot be returned * * *.

" 'Thus, if a machine is sold for a particular purpose, and it will perform none of the functions, it may be returned; but if it only performs them badly the remedy is by action for damages.' The fact that some parts may be defective, or that it does not perform as guaranteed, does not warrant a rescission of the contract, so long as the machine is not wholly worthless."

The testimony in this case shows that a machine of the type in question is of practically no value if it will not register accurately. The basic function for the register is to automatically lift a sheet of paper from one location and place it accurately under the printing type as set for the operation. We therefore find from the evidence in this particular case that the machine is wholly unsuitable from that for which it was sold. These points are overruled.

The trial court entered judgment for appellee and against appellant in an aggregate sum of $1,034.00 itemized as follows:

$250.00 for loss of profits; $50.00 for electrical installment expenditures; $607.-00 for appellee's down payments and $127.-00 for freight expended by appellee; for cancellation of the notes and mortgage which appellee executed to appellant, and granted title to and possession of said press into appellant.

We reform the trial court's judgment by deducting from it the sum of $250.00 as previously discussed, leaving an aggregate of $784.00 due appellee from appellant and as reformed, the same is affirmed.