O'Dell RYAN et al., Appellants,

v.

O. W. MATHEWS, Appellee.

No. 7204.

Court of Civil Appeals of Texas.
Amarillo.

Dec. 17, 1962.

Rehearing Denied Jan. 21, 1963.

See also 320 S.W.2d 44.

Lemon, Close & Atkinson, Perryton, for appellants.

Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, for appellee.

NORTHCUTT, Justice.

O. W. Mathews filed this suit against O'Dell Ryan and Perryton National Bank, a corporation, to recover upon two contracts for pasturage of cattle. Since it was agreed that if Mathews should recover judgment against Ryan that the same judgment should be against Perryton National Bank, we will not consider the bank any further herein.

The two contracts here in question are identical except as to dates. The first contract was dated September 13, 1956, and the second contract was dated September 26, 1956. Under the contracts Ryan was designated as first party and Mathews as second party. The terms of the contracts were as follows:

"WHEREAS, First Party is desirous of pasturing cattle on irrigated crops owned by Second Party and Second Party is desirous of taking the livestock in to pasture them under the following terms and conditions, to-wit:

"1. First Party agrees to deliver 300 head of cattle to Second Party's place for pasture between the 1st of November, 1956, and the 1st of December, 1956. The cattle are to be weighed prior to such delivery.

"2. Second Party agrees to furnish all feed, salt and water as may be required and to be responsible for generally taking care of the cattle and in particular, to see that all strays are located and returned.

"3. First Party agrees to take the above described cattle off the pasture between the 1st of April, 1957, and the 15th of April, 1957. Immediately after being taken off pasture, cattle then on hand are to be weighed. After the cattle are weighed and a 2% per cent shrinkage is taken from their weight at the time they are taken off pasture, the beginning weight is to be deducted from their weight at the time they are taken off pasture (less shrinkage) and First Party then agrees to pay Second Party the sum of fifteen cents per pound on the gain, if any, as the consideration for pasturing such cattle."

Ryan delivered the 600 head of cattle to Mathews and they were weighed before delivery. Thereafter, because of a severe storm, a great number of the cattle were frozen to death. There were remaining after the storm 419 head. These 419 were weighed when taken off of the pasture. This suit was for the gain in weight of the 419 head remaining. It was the contention of Mr. Ryan that he did not owe anything because there was no gain in weight as the 600 head weighed more when put on the pasture than the 419 did after being taken off pasture. It was contended by Mathews, both by agreement and by custom, that the death of animals was Ryan's loss and Ryan contended the parties agreed that Ryan's liability for pasture depended on the total

cattle herd weighing more when taken off pasture than when put on.

The case was tried to a jury upon special issues. In reply to the special issues submitted, the jury found that before Mathews signed the contract in question, Ryan agreed to stand the death loss among the cattle mentioned in the contract; that during the time in question and where the cattle were on pasture, it was the custom in pasturing cattle upon the gain basis for the owner of the cattle to stand the death loss; that Mathews did not fail to use that degree of care in taking care of the Ryan cattle that a person of ordinary care and prudence would have used under the same or similar circumstances and also found that the loss of the cattle during the March 23, 1957, storm was due to the act of God. Judgment was rendered for Mathews for the sum of $7,465.05 with interest from the date the cattle were taken off the pasture, making a total of $9,732.75. From that judgment appellant perfected this appeal.

The amount of gain by the 419 head was determined by taking the weight of the 600 head when received which was 240,005 pounds, being an average of 340 pounds for each head and then multiplying 340 by 419 making the weight of the 419 head when received. The 419 head were weighed when removed from the pasture and the amount of gain for the 419 head less the 2% per cent shrinkage was 49,767 pounds.

Appellant presents this appeal upon the theory that the court erred in admitting evidence that Mr. Ryan agreed to stand the death loss, and also as to admitting evidence of custom, since the contract was not ambiguous and the parties expressly agreed the liability for pasture depended on the total cattle herd weighing more when taken off pasture than when put on, and there was not any evidence or in the alternative insufficient, competent, admissible evidence to authorize the submission of special issues, and in the alternative the answer of the jury to special issues one and two were against the great weight and preponderance of the evidence and the verdict or judgment based thereon would be manifestly unfair and unjust.

On a former hearing on a venue matter we held in this same case at 320 S.W.2d 44 as follows:

"A very careful study of the contracts involved convinces us there is not any wording in the instruments that make provision as to who would stand the death loss of the cattle. To say the least, they are not so plain as to reflect no shadow of doubt as to their meaning. This being true the use of the parol evidence rule should not be invoked to defeat an intention and understanding between the parties as to who would stand such loss, which this record shows could be clearly proven, and without which appellant, from the record in this case, has no cause of action for almost a half year of pasturage on 600 head of cattle. In Ellisor v. Kennedy, 128 S.W.2d 842, 844 (writ refused) the Court of Civil Appeals at Galveston said:

"'"The ultimate purpose of the courts should be to arrive at the real intention of the parties to a contract, and to give the contract force accordingly. It is an important rule of construction that a written contract, plain and reflecting no shadow of doubt as to its meaning, shall be the sole evidence of the intention of the contracting parties. But, if the contract is not clearly unambiguous, the rule should not be permitted to defeat an intention and understanding which can be clearly proven by parol, and to lead to a conclusion which is absurd."'

"Even if the written contracts herein are not ambiguous the evidence of Hall Jones and appellant was admissible under the record made in this case for the purpose of ascertaining the real intention of the parties. In Scott v. Walden, Tex.Com.App., 140 Tex.

31, 165 S.W.2d 449, 452, 154 A.L.R. 1 it is said:

" 'Whether or not, strictly speaking, the language of the grant is ambiguous need not be discussed, for even though it is not ambiguous on its face parol evidence was nevertheless properly admitted to apply the language to the subject with which it dealt for the purpose of ascertaining the real intention of the parties. First National Bank of Amarillo v. Rush, Tex.Com.App., 210 S.W. 521; Ryan v. Kent, Tex.Com. App., 36 S.W.2d 1007; Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579; Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004.'

"Our Supreme Court has announced practically the same rule when it said:

" 'It is proper to consider parol testimony as to the circumstances surrounding the parties out of which the contracts grew, not to add to or vary their terms, but to apply the contracts to the subjects with which they deal for the purpose of ascertaining the real intention of the parties.' Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579, 583.

"This Court in Archer v. Skelly Oil Co. [Tex.Civ.App.], 314 S.W.2d 655 has recently followed the same rules as those just quoted.

"We are not unmindful of the fact that a separate agreement could not be proven by parol if it is in conflict with the plain words of the written contract, absent an allegation of fraud, accident or mistake, Bryant Co. v. Hamlin Independent School District, 118 Tex. 255, 14 S.W.2d 53, but as we view the written contracts with which we are here concerned they are practically void of any language that would even tend to show such agreement. To say the least they are not unambiguous on the subject. This is particularly true when we consider that the well settled law of this State requires that a contract should be construed most strictly against the party who prepared it and tendered it to the other for acceptance, Brandtjen & Kluge, Inc. v. Tarter, Tex.Civ.App., 236 S.W.2d 550; Masterson v. Allen, Tex.Civ.App., 69 S.W.2d 539 (writ refused), which was Ryan in our case. Thus, 'It may be shown that a parol contract was made independently, wholly collateral to, and distinct from, a written one made at the same time. In such cases, the parol evidence is used, not to vary the terms of the written instrument, but to show either that it is inoperative as an entire and independent agreement, or that it is collateral and irrelevant; and, in many instances, the terms reduced to writing may constitute but a small part of the real contract.' Roberts v. Bonaparte, 1890, 73 Md. 191, 20 A. 918, 919, 10 L.R.A. 689. A similar rule has been recognized by the Supreme Court of Tennessee in Turner v. Abbott, 116 Tenn. 718, 94 S.W. 64, 6 L.R.A.,N.S., 892."

We believe we were correct in holding in the former hearing as above quoted and hold the same here.

This case was tried upon the theory that the contracts in question were ambiguous. This placed the burden upon Mathews of showing what was the real meaning of the parties to the contract. However, should we be wrong in holding the contracts were ambiguous and should interpret the contracts as not being ambiguous as contended by Mr. Ryan, we would be compelled to reach the same conclusion that Mr. Mathews was entitled to recover for the gain on the 419 head of cattle. The contracts provide "that immediately after being taken off pasture, cattle *then on hand* (emphasis ours) are to be weighed. After the cattle are weighed and a 2% per cent shrinkage is taken from their weight at the time they are taken off pasture, the beginning weight is to be deducted from *their* (em-

phasis ours) weight at the time they are taken off pasture (less shrinkage) and first party then agrees to pay second party the sum of 15¢ per pound on the gain, if any, as a consideration for pasturing such cattle." As we see the contention of appellant, the cattle then on hand could only apply to the 419 head of cattle, as those were the only cattle then on hand to be removed from pasture and weighed. The sentence preceding that just above quoted from the contract provides for the removal of the "above described cattle" which has reference to 600 head, then to explain what was the real intention of the parties to the contract since they disagreed as to the terms the court was correct in admitting the evidence to determine that intention. Under this record we think the proper issues were submitted by the court, and the evidence justified the findings of the jury. Judgment of the trial court is affirmed.