# THE CHESAPEAKE BREWING COMPANY *vs.* SOLO-MON GOLDBERG.

*Landlord and Tenant—Covenant to Surrender Premises in Same Condition They "now are"—Extrinsic Evidence to Aid in Construction of Contract.*

When, in a lease of property to begin at a future time, the lessee covenants to keep the premises in repair and to surrender the same at the end of the term "in the same condition as they now are," the covenant refers to the condition of the premises at the beginning of the term and not to their condition at the time of making the lease.

When the question is whether a covenant in a lease to surrender the premises in the same condition in which they "now are" refers to the condition of the premises at the time of the making of the lease, or to the time when the lessee was to take possession, evidence is admissible to show that at the time the lease was made, the premises were out of repair, and that the lessor agreed to put them in good condition before the beginning of the term.

*Decided March 5th, 1908.*

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER and WORTHINGTON, JJ.

*H. Arthur Stump*, for the appellant.

*Myer Rosenbush*, for the appellee.

WORTHINGTON, J., delivered the opinion of the Court.

The only question presented for this Court's determination by the appeal in this case is whether the words "now are" contained in a covenant on the part of the lessee of certain premises, to surrender the same at the end of the term in the same condition as they "now are" refer to the condition of the premises at the time of making the lease or to their condition at the commencement of the term.

The lease in question purports to demise to the Chesapeake Brewing Company, (the appellant) the premises known as No. 1401 East Pratt street in Baltimore City, for the term of two years, beginning on the 1st day of May, 1904, and ending on the 30th day of April, 1906, at the yearly rental of six hundred dollars, payable in advance in equal monthly installments of fifty dollars each. The language of the covenant out of which this action grew is as follows: "And the said lessee hereby covenants and agrees with the said lessor, * * * that he will keep said premises in repair, and surrender the same at the end of the term hereby created, or any renewal thereof, in the same condition as they *now are*, losses by fire and acts of God excepted.

It was further covenanted, "that said demised premises are *now* in good repair" and that the words "lessor and lessee should be construed to include their heirs, personal representatives and assigns."

On June 14th, 1905, the original lessor sold the demised premises to Solomon Goldberg, the appellee, and duly assigned to him in writing under seal, all his rights and interests under said lease. The assignee (appellee) brought this action against the lessee, (appellant here) alleging that it did not surrender said premises in the same condition they were at the time of the rental, but did surrender them in a dilapidated and extremely bad condition, and claiming damages for the injury thereto in the sum of twelve hundred dollars.

The case was tried in the Court of Common Pleas of Baltimore City, without the aid of a jury, and the plaintiff obtained a verdict and-judgment for $490.

There are two exceptions in the record, one to the exclusion by the Court of certain evidence, and the other to the granting of plaintiff's prayer and the refusal to grant certain prayers offered on the part of the defendant, both exceptions being intended to raise the question suggested above, to wit: Whether by the terms of the covenant to keep in repair, the premises were to be surrendered at the end of the term in the condition they were at the making of the lease, or in the condition they were at the commencement of the term?

By its ruling the lower Court construed the words "now are" in the covenant to refer to the beginning of the lessee's term and damages were allowed on a comparison of the condition of the premises at that time with their condition, upon being surrendered, at the end of the term.

The appellant cites the case of *Stultz* v. *Locke*, 47 Md. 564, in support of its contention that the words "now are" as contained in the covenant, refer to the time when the lease was executed, and insists that the measure of the plaintiff's damages is ascertained by a comparison of the condition of the premises at that time with their condition at the end of the term.

The significance of the appellant's contention is found in the fact, as will hereafter appear, that the premises were not in as good condition at the time of the making of the lease as they were when the lessee's term began, and therefore if the plaintiff is entitled to recover at all, a smaller amount of damages would be recoverable if its contention be sustained.

In the above cited case of *Stultz* v. *Locke* the Court says: "It was decided in *Middlekauff* v. *Smith*, 1 Md. 329–340, that a covenant in a lease 'to repair' generally, or 'to keep the premises in repair,' imposes on the covenantor the legal obligation to keep the premises in as good repair *as when 'the agreement was made"* * * * "or in other words, that a covenant to keep in repair, and a covenant to keep in as good repair *as they now are*, are identically the same covenant."

In both these cases the covenant was one to be kept and performed on the part of the lessor, and the same is true of the case of *Guttridge* v. *Maynard*, 7 C. & P. 129, therein referred to.

In the case of *White* v. *Nicholson*, 4 Mann. & Gr. 95 (43 E. C. L. R. 58) the Court held that a covenant on the part of the *lessee* "to leave the premises in the same state as they '*now are*,'" bound him to restore them to the landlord in the same condition they were *at the commencement of the lessee's term.*

The four judges who sat in the last mentioned case were

TINDAL, C. J. and COLTMAN, ERSKINE and CRESWELL, JJ., and while some professed at first a doubt, they all united in the judgment, each filing a separate opinion, holding that the words "now are" referred to the commencement of the term and not to the date of the lease.

Without determining if there is any good ground or principle for this distinction between a covenant on the part of the lessor and one on the part of the lessee to restore the premises at the end of the term in the same repair they "now are," we think that slight extrinsic circumstances are sufficient to indicate that such a covenant on the part of the lessee refers to the beginning of the term rather than to the time of making the lease.

It is of course familiar law that extrinsic evidence is not legally admissible to alter, contradict or vary the terms of a written contract, yet it is equally well settled that where a question arises as to the general intention of the parties, concerning which the instrument is not decisive, proof of independent facts collateral to the instrument, may be admitted. *Phillipps on Evidence*, 497; *McCreary* v. *McCreary*, 5 G. & J. 157; *Stockman* v. *Stockman*, 32 Md. 207.

In *Roberts* v. *Bonaparte*, 73 Md. 199, JUDGE MILLER, speaking for the Court says: "Courts in the construction of contracts look to the language employed, the subject matter and the surrounding circumstances, they are never shut out from the light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them and so as to judge of the meaning of the words and of the correct application of the language to the things described: *Nash* v. *Towne*, 5 Wall. 699."

Now in this case it was proven without objection that at the time the lease was made it was understood and agreed between the parties that the property should be improved and put in good condition before the lessee entered into possession. The lessee agreed to pay $100 toward these repairs and im-

provements which cost, as testified to by the lessor, $550 or $650.

The lessor says: "I overhauled the property from top to bottom and delivered it to the Chesapeake Brewing Co. in (such) good condition that it could not be improved any more," and further on he says: "My expenses were big to fix up the property and I told him that if they will give me one hundred dollars I will rent it to them and they have agreed upon and fulfilled their contract with me."

Even if evidence of this collateral agreement to improve the property before the lessee entered, was not legally admissible yet being admitted without objection, it must be considered in the case and allowed its full force and effect. The rule is well settled that "when evidence is let in generally without objection and no attempt is made in the trial Court to limit or confine its effect, it is in for all purposes and it must be considered and allowed its full force." *Gibbs* v. *Gale*, 7 Md. 76; *Sentman* v. *Gamble*, 69 Md. 308; *Slingluff* v. *Bldg. Supply Co.*, 89 Md. 562.

There is other evidence in the case let in without objection, tending to prove that before the repairs were made the property was in such bad condition "that it was not fit for a man to live in."

Putting itself in the same situation the original parties to the lease were, at the time of its execution, the Court deems it unreasonable to suppose that the parties intended that the premises should be returned at the end of a short term of two years in such bad condition that they were not fit for a man to live in, although they were improved to the extent of $550 or $650, and put in first class condition just prior to the lessee's taking possession thereof.

Moreover, owing to the omission of the day of the month from the date of the lease, it does not appear on what day the lease was executed, the only evidence as to the time of its execution being the recital at the commencement of the lease as follows: "This lease made in duplicate, this——— day of March in the year one thousand nine hundred and

four," &c. This omission indicates that the minds of the contracting parties were not directed to the time of the making the lease, because the words "now are," are inapplicable to any particular date in that month.

There is also the covenant in the lease that the "premises are *now* in good repair," when the evidence tends to show that in fact before the repairs were made, that is at the time the lease was executed, they were in a very bad condition, or, as the witness expressed it, "not fit for a man to live in."

From all the facts and circumstances we have no doubt that it was the understanding and intention of the original parties to the lease, that the premises should be surrendered at the end of the term in the same condition they were at the beginning thereof. The appellee being the assignee of the original lessor, is entitled by virtue of the assignment, to the same rights under this covenant, as the lessor himself would have been entitled, had he continued to be the landlord.

Finding no error in the rulings of the lower Court on the two exceptions mentioned and no other point or question appearing by the record to have been tried or decided by that Court, its judgment will be affirmed.

*Judgment affirmed with costs.*