## COLONIAL PARK ESTATES *vs.* HENRY MASSART.

*Memorandum of Contract of Sale of Land—Signed Paper Not Intended to be a Contract—Action to Recover Money Paid on Account of Purchase of Land—Evidence.*

Plaintiff, upon making an oral agreement to purchase certain lots of ground, asked to see the kind of contract he would be required to sign, and the vendor showed him a certain printed blank form of contract. After reading it he expressed his satisfaction and paid $250 demanded as the first payment. At the request of the vendor, he signed a paper containing a reference to the numbers of the lots in question and the direction to have the deed made in his own name. Subsequently he was asked to sign a form of contract for the purchase containing provisions materially different from those contained in the printed form exhibited to him. This he refused to do and brought this action to recover the sum so paid. *Held,* that if these facts are found by the jury, the paper so signed by the plaintiff is not a sufficient memorandum of the contract of sale under the Statute of Frauds, and he is entitled to recover back the money so paid by him.

Although parol evidence is not admissible to contradict or vary the terms of a written contract, yet it is admissible to show that what appears to be a written agreement was not intended as such by the parties.

If the vendor and the purchaser agree to rescind their contract for the sale of land, the purchaser is entitled to recover a sum of money paid by him on account of the price.

When the question is whether a paper signed by the plaintiff was intended by the parties to be a binding contract, plaintiff may testify as to reasons given by the defendant for the sign ing of the paper.

*Decided February 25th, 1910.*

Appeal from the Superior Court of Baltimore City (Niles, J.).

*Plaintiff's 7th Prayer.*—That the letter of July 10th, 1908, written by the defendant to the plaintiff, offered in evidence, taken together with the failure of the defendant to make any demand upon the plaintiff for the payment of the monthly instalments of $30 mentioned in the paper writing bearing date July 3rd, 1908, and the failure of the defendant to tender to the plaintiff, a good and sufficient deed conveying the three lots mentioned in said paper writing to the plaintiff, amounts in law to acquiescence on the part of the defendant in the rescission by the plaintiff of his agreement to purchase said lots and there being no evidence of any damage to the defendant through the rescission of said agreement on the part of the plaintiff, and their verdict must be for the plaintiff. (*Refused.*)

*Plaintiff's 7th Prayer as Modified.*—That even although the jury may find the facts set out in the defendant's second prayer as modified, which are therein stated to constitute a contract entered into by the plaintiff and defendant, as evidenced by the paper writing dated July 3, 1908, offered in evidence; still, if the jury further find that the defendant, after the receipt by it of the letter written to it by the plaintiff and dated July 9th, 1908, if the jury shall so find, acquiesced in the rescission by the plaintiff of the said agreement and consented to a rescission of said agreement and only reserved its right to hold the plaintiff for such damages as it might suffer by reason of such rescission, then their veridct must be for the plaintiff for the deposit of $250, if the jury

shall so find, and interest. in their discretion from the 9th day of July, 1908, there being in this case no evidence of any damage to the defendant through the rescission of said agree· ment on the part of the plaintiff. (*Granted.*)

*Defendant's 2nd Prayer.*—If the jury find from the evidence that the defendant sold to the plaintiff the three lots of ground mentioned in the memorandum of agreement offered in evidence in this case and signed by the plaintiff, and if the jury shall find that the defendant was ready and able to perform its part of the said agreement, then the verdict of the jury must be for the defendant. (*Refused as offered.*)

*Defendant's 2nd Prayer as Modified.*—If the jury find that the plaintiff signed the paper dated July 3, 1908, and that prior to said signing, the plaintiff had been shown by an agent of the defendant three lots, which were identified to said plaintiff by the defendant's agent as lot numbers 3, 4 and 5, in section Q on a plat of the·defendant's property, and if the jury shall further find that said lots were plainly staked off, and that the plaintiff walked over. said lots and saw their boundaries, and if the jury shall further find that the plaintiff asked the agent of the defendant as to the rules prescribed by the defendant for purchasers of its lots, and was shown by said agent of the defendant a printed form of deed or con· tract containing certain rules and restrictions, then a contract of sale was entered into between the plaintiff and the defendant whereby the plaintiff agreed to buy, subject to the rules contained on the printed form of deed or contract shown to the plaintiff as aforesaid, if the jury shall so find. the lots numbers 3, 4 and 5 in section Q on the plat of defendant's property, for the price of $4,000, payable at the rate of $30 per month; and if the jury further find that the plaintiff wrote the defendant the letter of July 9, 1908, offered in evidence, then their verdict must be for the defendant, pro·· vided the jury shall further find that the said defendant has ever since the 3rd day of July, 1908, been ready and able to convey to the plaintiff the lots mentioned in the said paper writing, subject only to the rules set forth in the blank printed

deed or contract shown to the plaintiff as aforesaid, if they shall so find; and provided the jury shall further find that the defendant did not consent to the rescission of the contract, reserving only its right to hold the plaintiff for damages, as set out in the plaintiff's 7th prayer, as modified. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*R. B. Tippett* and *J. Royall Tippett,* for the appellant.

*J. Kemp Bartlett* and *R. H. Bland* (with whom was *L. B. K. Claggett* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee sued the appellant in the Superior Court of Baltimore City on the common counts in assumpsit. The trial of the case upon the general issue pleas resulted in a judgment for the plaintiff from which this appeal was taken.

The record discloses the fact that the purpose of the suit was to recover from the defendant company the sum of two hundred and fifty dollars which the plaintiff, Henry Massart, had paid to it on account of a proposed purchase, of three lots of ground, which he contends was never consummated. It appears from the evidence that Massart, having seen an advertisement by the company offering for sale lots in a tract of land on the outskirts of Baltimore City which it was engaged in developing under the name of the "Colonial Park Estates," visited the property on July 4th, 1908, where he met Mr. McCoy the selling agent of the company. Mr. McCoy took him over the property explaining its attractions and gave him a sales plat of it indicating to him the various lots which had already been disposed of and those remaining unsold. Massart became much interested in the property and on the next day he called up McCoy by phone to ascertain whether he could buy the lots designated on the plat as Nos.

3, 4 and 12. He was informed that lot No. 12 had been sold, whereupon he expressed his willingness to pay $4,000 for lots 3, 4 and 5. McCoy replied that he could not accept that price but invited Massart to come out to the property again and see him at the same time expressing the hope that they would be able to come to mutually satisfactory terms.

The next day, July 5, Massart again visited the property and after examining the sales plat which showed the dimensions and location of the several lots, and looking over the land and making some calculations as to the area contained in lots 3. 4 and 5, he made a verbal offer for them of $4,000 to be payable $250 in cash and the balance in weekly instalments of $30 each. McCoy, after consulting the president of the company, accepted the offer and asked for the cash payment of $250, but. Massart, according to his testimony declined to make any payment until he was shown a sample of the contract the company would make with him for the lots. McCoy at first said he had no sample with him but, upon the insistence by Massart on seeing the kind of contract he would have to sign, before he would make any payment, McCoy produced and gave to him a printed blank form of contract containing quite a number of provisions and restrictions such as are usual in suburban real estate developments. Massart. went over the contract and, after discussing some of its provisions with McCoy, who promised to bring it to him next day to sign, he expressed himself as satisfied and paid the company the $250 cash payment.

When he had made. the payment McCoy filled up and handed to him what he says he supposed was a receipt for the money, at the foot of which. he without reading the paper signed, at McCoy's suggestion, the direction for making out the deed. The paper so handed to him at that time is as follows:

"No lots reserved or held. No verbal agreement recognized by the company. All sales are subject to the rules and acceptance of the company.

BALTIMORE, July 3, 1908.

M. Henry Massart.                    W. P. McCoy. ·
    To Colonial Park Estates of Baltimore City, Dr.
C. & P. Phone, St. Paul 3119.    Offices: 763-769 Calvert Bldg.
    3 Lots No. 3-4-5   Sec. Q.   Price, $4,000.00 .... $4,000.00
    First payment, two hundred fifty dollars........    250.00
    _____

    Balance due.............................$3,750.00

To the General Manager of Colonial Park Estates—

    Please make deed for above lot          Term $30 per month
in the name of
and
        Signed by payer:
                H. MASSART.              Address of Payer:
Offer                                    617 St. Paul St."
accepted
July 6, 1908,
    JOHN J. WATSON,
            President."

    It appears from the record that this memorandum was in
fact signed by Massart on July 5th, although bearing date as
of the 3rd, and that the memorandum of acceptance was
signed by Watson on the 6th as therein stated.

    The account given by McCoy in his testimony of what
transpired between him and Massart on the two visits of the
latter to the property on July 4th and 5th respectively sub-
stantially agreed in most of its details with that of Massart,
but he said in reference to what occurred at the time of mak-
ing the cash payment: "I communicated the acceptance of
the offer to Mr. Massart and a memorandum of the agree-
ment was drawn up on a paper and Mr. Massart gave me a
check for two hundred and fifty dollars ($250) to bind it.
I went over the restrictions with Mr. Massart and he asked
if they were reduced to writing and I said they were.   He
asked for a form of contract a form of paper that had all of
these provisions in.   Of course each particular lot required a

special set of papers but there was a general form used." McCoy further testified that he had fully explained to Massart all of the restrictions and that the latter knew all about it.

On the morning after the payment of the $250 McCoy took to Massart's office, for signature by him, a formal contract for the purchase of the lots. That contract was drawn upon a form of the kind shown to Massart on the previous day when he paid the money, but there had been inserted into the blank spaces of the printed form several very material provisions imposing additional burdens and restrictions upon the lots. One of these provisions made the lots liable in perpetuity for a proportionate share, not exceeding six dollars per annum on every dwelling to be erected on them, of maintaining a sewerage system; another reserved to the company the right to lay sewer and water pipes, erect and maintain poles for electric lighting and heating purposes on the rear line of the lots; still another contained minute and stringent conditions prohibiting the construction or maintenance of privies or vaults or cesspools for the storage of any kind of liquid waste on any portion of the lots.

When this contract was tendered to Massart for signature he, according to his testimony, asked Mr. McCoy to leave it with him so that he could study it. A few days thereafter he notified the company that he had decided not to buy the lots and requested the return of the $250 which he had paid to it. Not receiving the money he brought the present suit and recovered a verdict for the full amount with interest.

It appears from the record that Massart when refusing to sign the contract for the purchase of the lots assigned as his reason for so doing only that as he lived in France he thought it unwise to bind himself up here in such an engagement. When he was on the witness stand he also assigned as reasons for not making the purchase that the lots tendered him contained smaller areas than those shown on the plat exhibited and given him at the time of the alleged purchase, as well as that the contract tendered him for signature was materially

different in its provisions from the one shown him when he paid the deposit. We do not discuss those features of the case because, in the view which we take of it, they are not material to the issue except in so far as the plaintiff's statements in that respect might influence a jury in passing upon the credibility of his testimony.

The substantial contention of the appellant is that the paper handed by McCoy to Massart when the $250 were paid constituted a sufficient note or memorandum of the sale within the Statute of Frauds and that the signing by Massart at its foot of the direction to make the deed in his name made the purchase binding upon him, and that he is therefore not entitled to maintain the present action for the recovery of the money. Without pausing to consider whether that paper would have constituted a sufficient memorandum of the sale to bind Massart as purchaser if it had been signed by him with the purpose and intention that it should constitute such a memorandum, we think that if the money was paid by him as he testified that it was under the distinct understanding that the sale was to be made upon the terms set out in the printed form of contract then given to him and further that a contract therefor upon those terms was to be furnished him for execution on the following day, the paper which he signed should not be regarded as a binding memorandum of a contract of sale of the lots.

Although parol evidence is inadmissible to vary or contradict the terms of a written agreement, it is well settled that such evidence is admissible to show that a particular written paper "was never intended as a contract as the binding record of a contract between the parties." And this has been held to be true even though the paper writing in question be in the form of a contract and bear the signatures of those named in it as the contracting parties. We distinctly held this to be the law upon the authority of many cases both English and American cited by us, in the *Southern Advertising Co. v. Metropole Co.,* 91 Md. 61-8.

· The Supreme Court of the United States in *Burke* v. *Dulaney,* 153 U. S. 234, upon a review of the cases upon this subject, reached the conclusion there stated in its opinion that, "The rule that excludes parol evidence is contradiction of a written agreement presupposes the existence in fact of such an agreement at the time the suit is brought. But the rule has no application if the writing was not delivered as a present contract, and parol evidence was admissible to show that there never was any concluded binding contract entitling the party who claimed the benefit of it to enforce its stipulations."

· The *Southern Advertising Co.'s Case* has recently been affirmed by us in *Birely & Sons* v. *Dodson,* 107 Md. 233, and the principle upon which it rests has been recognized and relied on in many cases in other jurisdictions among which are *Ware* v. *Allen,* 128 U. S. 590; *Adams* v. *Morgan,* 150 Mass. 148; *Nutting* v. *Minnesota Ins. Co.,* 98 Wis. 32; *Reynolds* v. *Robinson,* 110 N. Y. 654; *Pollock on Contracts,* 236; *Clark on Contracts,* 62.

If therefore the jury in the present case believed Massart's testimony as to the circumstances and understanding under which the $250 were paid to him by the company and the memorandum or receipt handed to him by its agent McCoy was signed, that writing did not constitute a sufficient memorandum of a sale under the Statute of Frauds and there was no binding contract of sale between the parties and the plaintiff was entitled to recover back the money so paid by him.

Examining now, in the light of what we have said, the rulings of the Court below, which the appeal brings up for review, we find thirteen bills of exceptions in the record. Of these twelve were to rulings on evidence and one to the Court's action on the prayers. At the close of the case the plaintiff offered seven prayers all of which were rejected as offered, but the seventh was granted with certain modifications. The defendant offered five prayers all of which were rejected as

offered, but its second prayer was granted after having also been modified by the Court.

There was no error in granting the plaintiff's modified seventh prayer which in effect asserted that even if the jury found, under the defendant's modified second prayer, that the memorandum, signed on July 5th when the $250 were paid, was a sufficient contract of sale to bind the plaintiff, still their verdict must be for the plaintiff if they further found that the defendant subsequently acquiesced in and consented to a rescission of said contract.

Nor do we find any error in the rejection of the four of the defendant's prayers which the Court refused to grant. The first of those prayers asked the Court to take the case from the jury for want of legally sufficient evidence to entitle the plaintiff to recover. The third, fourth and fifth were each predicated upon the assumption that the memorandum of July 5th constituted a valid contract of sale of the lots, instead of leaving it to the jury to find from the evidence that it was intended by the parties to constitute a contract of sale or a written memorandum thereof. The defendant's second prayer as offered had the same defect as the three last mentioned ones, but the modification of it made by the Court before granting it relieved it of that vice. We regard that prayer in its modified form as rather more favorable to the defendant than the case as presented by the record warranted, but of that the defendant cannot complain.

No reversible error appears in the rulings of the learned judge below upon the admissibility of evidence. The first four exceptions relating to those rulings refer to questions of preliminary character having no direct bearing upon the issue in the case and the answers to them were of such character as to do the defendant no injury.

After the plaintiff had testified in his own behalf, in the manner already mentioned by us, in reference to the payment of the $250 on July 5th and the handing to him, for his signature at that time by McCoy of the written memorandum, he was asked: "What did he say you were signing the paper

for ?" The Court allowed him to answer it over the defendant's objection and the fifth exception was taken to that ruling. The witness answered: "I didn't ask any thing about it but took it as a receipt for two hundred and fifty dollars." We think in view of the evidence already in the case at that time the testimony in question was properly admissible as part of *res gestae* and as tending to show that the written paper referred to was not intended to constitute a contract of sale or a memorandum of one. That paper does not on its face purport to be such a memorandum but to be a bill or statement of account charging Massart with $4,000 as the price of the lots, crediting him with the $250 paid by him and striking a balance. All that he signed was a printed direction at the foot of the paper indicating in whose name the deed was to be drawn when the time for preparing that the instrument arrived. In view of his testimony that the money was paid after the promise to him that a contract of sale of a particular charter containing the full terms of the proposed purchase was to be executed, and of the further fact that on the next morning a written contract was tendered him by the company for execution, the admission of the testimony was especially appropriate.

The sixth, seventh and eighth exceptions all related to questions as to the absence, from the form of contract shown by McCoy to the plaintiff on July 5th as containing the terms of a proposed sale, of sundry provisions which appeared in the contract tendered to the plaintiff for signature on the following day. Those exceptions were rendered immaterial by the admission of counsel in open Court at the hearing of the appeal that the difference between the two forms of contract was in accordance with the contention of the plaintiff. We deem it unnecessary to refer to the remaining four exceptions to testimony further than to again state that we find no reversible error presented by them.

For the reasons stated in this opinion the judgment appealed from will be affirmed.

*Judgment affirmed with costs.*