TODD ET AL. *v.* FERRELL ET UX.

[No. 88, October Term, 1956.]

(Two Appeals In One Record)

*Decided April 3, 1957.*

The cause was argued before BRUNE, C. J., COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*George D. Solter,* with whom were *Due, Nickerson, Whiteford & Taylor* on the brief, for appellants.

*Samuel D. Hill,* with whom were *George L. Clarke* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

This case grows out of a collision involving three motor vehicles, all of which were proceeding in the same direction in a line of traffic which was halted by a traffic light about 250 feet ahead of the leading one of these three vehicles. The first of them was a combination tractor-trailer belonging to the appellant, The Guardian Moving and Storage Company ("Guardian") and driven by Guardian's employee Paul R. Todd, the other appellant (the two appellants being collectively referred to below as "Todd", unless the context indicates that the individual appellant only is being spoken of). The second vehicle was a passenger car driven by one of the appellees, James G. Ferrell. The other appellee, Ferrell's wife, was a passenger in that car. A third adult passenger was a Mrs. Pepe, a sister of Mrs. Ferrell. These three were the plaintiffs in three separate suits against Todd and against one Baugh, who was the owner and driver of the third vehicle, a ¾-ton Chevrolet panel truck. James G. Ferrell was

also a defendant in Mrs. Pepe's suit. That suit resulted in a verdict against Guardian, Todd and Baugh and in favor of Ferrell. It has been settled and is not before us. Verdicts and judgments thereon were rendered in favor of Ferrell and Mrs. Ferrell against Guardian, Todd and Baugh. Guardian and Todd had moved for a directed verdict at the close of the testimony, but their motion was overruled. They also moved for judgment N.O.V., and that motion also was overruled. After judgment was entered, Guardian and Todd appealed; Baugh did not.

Todd (using the name in the collective sense stated) reserved no exceptions to the charge of the trial judge. The appeal is based upon the denial of the motion for a directed verdict. They assert lack of proof of primary negligence on their part, and they seek to exclude from consideration the testimony of Baugh on the ground that it contradicts that of the plaintiffs.

The evidence is clear as to these facts: (1) All three vehicles were going south on Hanover Street in the City of Baltimore at about 9:30 or 9:45 A. M. on August 24, 1954, at which time the weather was clear and the roadway dry. (2) There was a considerable line of traffic in which these vehicles were moving and all the parties were aware of that fact. (3) They were all using the same lane, which was the easterly of the two southbound lanes and was next to the center line of the street. (There was testimony of Baugh, referred to later, that Todd swung over into the northbound lane and then cut back into the southbound lane of traffic just before stopping.) (4) The collision occurred after Todd stopped, and all three were jammed together when it was over. (5) The effect of the collision was a somewhat accordion-like squeezing of the Ferrell car, with injuries to the occupants and damage to the car.

What is less clear is the speed of the three vehicles, but it seems to have been about 20 to 25 miles per hour. The distance between vehicles is also (and almost unavoidably) not precisely shown. Todd was following a blue car at a distance which the helper on Todd's tractor (one Raugh) estimated at the time when Todd applied his foot brake at six

feet. Ferrell was following about twenty-five feet behind the Todd trailer (a thirty-two foot "flat-bed" trailer not carrying any load), and Baugh's truck was about twenty-five feet behind Ferrell's car. When traffic stopped because of the adverse traffic light ahead, Todd stopped without striking the car ahead, still at a distance estimated by Baugh as six feet. According to both of the Ferrells and Mrs. Pepe, the Ferrell car stopped short of the Todd trailer by a sufficient distance to enable them, as occupants of the front seat, to see a portion of the street between the trailer and the car. Baugh did not stop until after ramming the Ferrell car, and his testimony indicates that he had slowed his truck down somewhat but did not apply his brakes hard until just about the moment of impact. He claimed that he could have stopped in three or four feet.

There is the testimony which is usual in such cases about "sudden" stops. The term was used by all three drivers and by Mrs. Ferrell and Mrs. Pepe. Its exact significance is a little elusive, and it requires little citation of authority to show that adjectives alone are not enough to take a case to the jury. *Sonnenburg v. Monumental Motor Tours,* 198 Md. 227, 237, 81 A. 2d 617, 621; *Jones v. Baltimore Transit Co.,* 211 Md. 423, 428, 127 A. 2d 649, 652. The testimony of the Ferrells and Mrs. Pepe shows that the stop of the Todd tractor-trailer was not so sudden that the Ferrell car could not avoid hitting it and the Ferrell car did not stop with such suddenness as to throw them off the seat.

Baugh claimed that the Todd tractor-trailer swung left over the center line of Hanover Street to pass the car in front of it, that Todd found the traffic light against him and then cut back into the southbound lane ahead of Ferrell and stopped so suddenly that Ferrell ran into the trailer before Baugh hit him and that it all happened so quickly that Baugh could not stop before hitting Ferrell.

An officer of the accident investigation and prevention bureau of the Baltimore City Police Department arrived on the scene about ten minutes after the collision and before any of the vehicles had been moved. He found tire marks behind

the Todd and Ferrell vehicles, but could not identify them positively with those vehicles. There were none behind the Baugh truck. From an examination of broken glass and debris he placed the points of impact "within a foot either way" of the points where the vehicles were in contact with each other when he arrived on the scene. This lends some support to Baugh's claim that the Ferrell car hit the Todd trailer before Baugh hit Ferrell's car.

Todd claims that because of a conflict between Baugh's testimony and that of the plaintiffs, the latter cannot rely upon it. Todd's theory is that the plaintiffs are bound by their own testimony as judicial admissions. *McCormick on Evidence*, § 243, pp. 513-516, sets forth three different theories which are to be found in the cases dealing with this question and expresses a preference for the theory which is most liberal to the party seeking to make use of evidence at variance with his own. We do not think that Todd's objection was seasonably raised and therefore does not call for decision on its merit or for choice between the three theories. It is true that Baugh, who was called by the Ferrells as an adverse witness, testified before any of the plaintiffs had taken the stand, so that there was no basis at that time to object to his testimony as being at variance with that of the plaintiffs. However, after the plaintiffs had testified, there was no motion to strike, nor was there any request for instructions to disregard his testimony because of the alleged conflict, nor was there any exception to the charge of the trial court which left the determination of all the facts relating to negligence to the jury. Evidence which may be open to objection, but which comes in without objection has the force and effect of proper evidence. *J. A. Laporte Corporation v. Penn.-Dixie Cement Corporation*, 164 Md. 642, 165 A. 195, 168 A. 844; *E. F. Enoch Co. v. Johnson*, 183 Md. 326, 37 A. 2d 901; *Chesapeake Brewing Co. v. Goldberg*, 107 Md. 485, 69 A. 37. Since no point was raised with regard to the admissibility of this evidence or to its being entitled to consideration in the trial court, the point cannot be raised for the first time on appeal to this Court. See Rule 9 of our former Appeals Rules in force when this case was tried and the appeal taken and Rule

885 of our present Maryland Rules, which is somewhat more liberal in terms than our former Rule 9.

An analysis of Baugh's testimony will show, however, that it is of very slight probative value. It is so self-contradictory as to be worthless as to how the accident happened. His claim that Todd swung out into the northbound lane amounts to no more than that a part of the Todd rig had gone over the center line and does not show that the tractor-trailer had vacated the lane ahead of Ferrell and then cut back into it. Ferrell's own testimony was that Todd had not swerved out into the other lane (and so was Todd's). In this view this testimony seems of little importance.

Baugh's assertion that the whole thing happened so quickly that he could not stop is patently irreconcilable with his testimony (a) that he was twenty-five feet behind Ferrell's car, and (b) that he could stop in three or four feet. If he saw the movements of Todd which he said that he saw, then on his own testimony he would have had ample time to avoid the collision. He did not, and he did not make any real effort to stop until just about the instant of impact. He left no skid marks. His testimony was so self-contradictory on this matter that it was, unworthy of consideration. *Slacum v. Jolley*, 153 Md. 343, 351, 138 A. 244; *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, 33, 190 A. 768; *Schmeizl v. Schmeizl*, 184 Md. 584, 589, 42 A. 2d 106; *Olney v. Carmichael*, 202 Md. 226, 231-232, 96 A. 2d 37, in which the testimony of a witness was held "too inconclusive, uncertain, vague, and contradictory to furnish a rational basis for a finding of negligence," and the many cases therein cited by Judge Hammond in support of that holding; *Chackness v. Bd. of Education of Harford Co.*, 209 Md. 88, 120 A. 2d 392.

The other ground relied on by Ferrell to establish Todd's primary negligence is that Todd failed to give a proper signal of his intention to stop. Code (1951), Article 66½, Section 193(c) provides: "No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of

any vehicle immediately to the rear when there is opportunity to give such signal."

Section 194 says: "The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device * * *."

The Todd vehicle was equipped with a six-inch tail-light on the rear of the trailer which was in working condition and did light up red when Todd put his brakes on. Ferrell was actually given adequate warning by this tail-light and stopped without hitting Todd. An almost identical case was reported in *Gandy v. Arrant* (La. App.), 50 So. 2d 676, involving four vehicles instead of three. The Louisiana court said at 50 So. 2d 679: "The only negligence complained of is that the truck was brought to a sudden stop at the west end of the bridge and that this action caused the cars which followed to stop suddenly. The fact that the Chevrolet immediately behind the truck was brought to a successful stop, and the fact that plaintiff Gandy brought his own car to a stop before striking the Chevrolet ahead of him, alike indicate that the action of the truck driver was not so sudden as to precipitate trouble from an alert driver following in the rear. * * * the facts related do not constitute actionable negligence on the part of the driver of the truck." It appears that the brake signal light in the present case was adequate compliance with the statutory requirements since Ferrell was sufficiently apprised of Todd's intention to stop. 29 *A. L. R.* 2d 5, Annotation: *"Automobiles—Stopping or Slowing"*; *Gandy v. Arrant, supra*; *McNulty v. Toye Bros. Yellow Cab Co.*, (La. App.), 73 So. 2d 23; *Ellis v. McCubbins*, 312 Ky. 837, 229 S. W. 2d 992.

*Kaplan v. Solomon*, 203 Md. 131, 99 A. 2d 736, cited by both sides, involved a three-car collision. The plaintiff was a passenger in the middle vehicle, a taxicab. The first vehicle, also a taxicab, had stopped in the middle of a block to discharge passengers. There was no contradiction of testimony that the driver of the first cab had given adequate warning and had stopped slowly, and that the driver of the second cab had ample time and warning to stop behind the first and actually did so at a distance of about twenty feet. The third

vehicle crashed into the back of the second cab and pushed it forward until it struck the rear bumper of the first cab. There was some testimony to the effect that the second cab stopped with such suddenness as to throw the plaintiff forward and backward before the collision, and that no warning of the stopping of that vehicle was given until the driver "throwed his brakes on and stopped." The warning lights came on when the brake was applied. There was no emergency requiring a quick stop. The jury returned a verdict against the drivers and owners of all three vehicles. The trial court entered judgment N.O.V. in favor of the owner and the driver of the first cab, and that judgment was affirmed on appeal. The driver (who was also the owner) of the third car did not appeal. The driver (who was likewise the owner) of the second cab appealed. The judgment against him was affirmed on the basis that "the jury might properly find that the giving of a belated signal was not due care under the circumstances, and that this contributed to the happening of the accident."

The facts of the *Kaplan Case* and of the instant case differ in a number of respects. Perhaps the most important difference is that in the *Kaplan Case* the stop was for a purpose affecting the leading car and at a time and place as to which others would have no knowledge or expectation, whereas in the instant case it was for a cause which every driver knew would require vehicles in the stream of traffic heading south on Hanover Street to stop and which he had reason to anticipate might occur at almost any moment. What would constitute a stop without adequate warning to following vehicles might be one thing where there was no reason for drivers of following vehicles to anticipate a stop and something quite different where there was every reason to suppose that a change in traffic lights would require all vehicles moving in a heavy stream of traffic to halt. Due care requires that the drivers of vehicles in such a stream moving along a city street where traffic is controlled by light signals must be prepared to stop promptly in compliance with such signals, and must be sufficiently alert and in such control of their vehicles as to be able to do so. There was no reason for Todd to an-

ticipate the conspicuous lack of such care on the part of Baugh which the testimony indicates.

In *Brehm v. Lorenz,* 206 Md. 500, 112 A. 2d 475, in which neither traffic congestion nor even a changing traffic signal was involved, this Court discussed the degree of care to be exercised by the leading driver and the following driver. We said at 206 Md. 505-506: "* * * Thus it is the duty of the rear driver to keep a safe distance between vehicles, and to keep his machine well in hand, so as to avoid doing injury to the machine ahead, * * *. The driver of the front car must exercise ordinary care not to stop or slow up without giving the driver of the rear car adequate warning of his intention to do so. The driver of the rear car must exercise ordinary care to avoid colliding with the front car. Just how much warning the driver of the front car must give of his intention to stop or slow up * * * cannot be formulated in any precise rule. The question whether due care was used by either of the drivers is a question for the jury except when the case is one where reasonable minds would not differ. *Cardell v. Tennessee Electric Power Co.,* 5 Cir., 79 F. 2d 934, 937. However, in any action for damages the court is not justified in inferring negligence merely from possibilities. A mere surmise that there may have been negligence on the part of the defendant will not justify the court in submitting the case to the jury. *The plaintiff must produce some evidence that the defendant, either by his act or omission, violated some duty incumbent upon him that caused the injury. If there is no evidence upon which a rational conclusion may be based in support of the plaintiff's claim, the court should withdraw the case from the jury."* (Emphasis supplied.)

Since we find that Todd did give a sufficient signal of his intention to stop and there was no other evidence of primary negligence on his or Guardian's part, the trial court was in error in not granting the motion for a directed verdict in favor of these defendants.

*Judgments reversed, with costs.*