CHACKNESS *v.* BOARD OF EDUCATION OF
HARFORD COUNTY
SAME *v.* CHOATE

[No. 88, October Term, 1955.]
(Two Appeals In One Record)

*Decided February 13, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*G. C. A. Anderson,* for appellant.

*William B. Somerville,* with whom were *Clark, Smith & Prendergast* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

A defendant in a motor vehicle personal injury case, against whom a jury found a verdict, appeals from the judgments directed by the court in favor of third party defendants whom he had brought into the case. While driving his Cadillac convertible south on U. S. Route 1, about three miles south of Belair, he struck a boy who was about to cross the road after passing in front of a school bus from which he had just alighted. When sued by the boy and his father in the Circuit Court for Harford County, the appellant impleaded the School Board of that County and the driver of the bus, one Choate. In the third party complaint he alleged that "said school bus was carelessly, recklessly and negligently operated and controlled by Roy F. Choate, its driver, while acting within the course and scope of his duties for and on behalf of the Board of Education of Harford County, in that it was suddenly, abruptly and unexpectedly stopped without giving due and careful warning of his intention to stop the same directly in front of the car driven by" the appellant and that the said Choate knew, or should have known, that the children who were leaving the bus "would cross in front of the bus from the east side of the road to the west side of the road", and that with this knowledge, he stopped abruptly and unexpectedly "without looking in his mirror to ascertain whether any car was following said bus at such proximity and at such speed that said car would either be caused to run into the bus or swerve to the side to avoid

hitting the bus, and thereby striking any person or persons crossing in front of the bus." The original plaintiffs filed an amended declaration against the School Board and the driver of the bus and adopted, for the purpose of the declaration, the allegations as to the negligence of these two defendants. The School Board demurred and Judge Niles, sitting in the Court of Common Pleas of Baltimore—the cases having been removed there—sustained the demurrer on the holdings of *Weddle v. School Commissioners*, 94 Md. 334; and *Gold v. Mayor and City Council*, 137 Md. 335, that the Board was immune from suit. At the trial of the cases, Judge Digges, sitting by special assignment, directed a verdict for Choate. The jury found against the appellant, who has since satisfied the judgments against him and appeals from the judgments in favor of the School Board and Choate.

The appellant's first contention is that the School Board of Harford County, a body corporate and a body politic, may be sued in tort for the negligence of its employees and servants in the operation of its school busses. He relies on legislation and cases since the decision in the *Weddle* case, including Code 1951, Art. 77, Sec. 65, which directs the County Boards of Education to prepare itemized and detailed school budgets for the current year, and Sec. 58 of that Article, directing these Boards to consolidate schools where practicable and to arrange transportation to and from such schools. Cases relied on are *Board of Education v. Wheat*, 174 Md. 314; *Adams v. St. Mary's County*, 180 Md. 550; *Clauss v. Board of Education*, 181 Md. 513; and *Board of Education v. Lange*, 182 Md. 132.

We find it unnecessary to decide whether this contention is correct and assume, without deciding, that it is, because, as we see it, the evidence shows no negligence on the part of Choate, the agent and servant of the School Board, and therefore no liability on the part of the Board even if it is subject to suit. Neither in the pleadings nor in the evidence is there any suggestion that the Board

is liable in tort for any reason or cause, except the alleged negligence of Choate.

It was suggested at the argument that Gerald Testerman, a fourteen year old safety patrolman on the bus, was negligent. Again, if we assume, without deciding, that this is so, there is nothing whatever in the pleadings or the testimony to show that he was the agent or servant of the School Board or of Choate.

We turn then to the second contention of the appellant that there was evidence sufficient to allow the case to go to the jury as to Choate. It is conceded that there is evidence which permits, if it does not compel, the finding that the appellant was negligent, but the claim is that Choate was also guilty of negligence which contributed to or was a proximate cause of the accident. The testimony shows that the bus was a regular yellow school bus, marked as such, carrying some thirty-five children, which had stopped about a tenth of a mile back of the place of the accident and then proceeded on, slowing down as it approached the stop involved in the case. The flasher lights which the school bus carried in front and back were set in motion by a switch on the steering column and if not sooner actuated, began to flash when the door of the bus opened. Choate testified that on this occasion they were turned on before the doors were opened and he is affirmed in this by Testerman, as well as by the driver of an automobile which was following the bus. After the bus stopped on the right side of the four lane undivided highway, Testerman opened the door, went around the front of the bus to the left hand fender, and the boy who was hurt and his brother, aged twelve and ten, got up from the middle of the bus where they were sitting and followed him to the left front fender of the bus and then went out into the road, where they were struck by the car of the appellant. Testerman's recollection is that as he walked around the bus, the children were coming out of the door. Choate estimates that it was some fifteen seconds from the time the bus stopped until they were struck. Testerman says that the first

time he saw appellant's car was almost at the moment of impact. He thinks he was standing at the left front fender five or ten seconds before the children reached there. Motorists who were following the bus say that appellant had passed them shortly before the accident going at a speed of sixty to sixty-five miles an hour—he almost struck one of them—and going at that same speed, had crossed the center line of the dual highway in order to pass two cars. One of these motorists, who then was some two hundred yards behind the bus, said that appellant was one hundred yards behind it at the time it started to slow down, with its lights blinking. Without objection, he testified that appellant had ample time to stop after the lights started to blink, even at the speed he was going. He said the children got off the bus, not in a rush, but that there was a definite time lag between the stopping of the bus and the time of the accident. It was shown that the Cadillac stopped a short distance in front of the bus after the accident and that there were skid marks from both the left and right tires. Appellant denied that he had been drinking, although a State policeman testified that he smelled alcohol on his breath five minutes after the accident. Appellant testified, too, that because he had a boy of school age in his car, he thought it was a school holiday and that there were no children on the bus. His version of the relative speeds and positions is that the bus stopped without warning when he was "twenty-five, thirty, maybe thirty-five feet behind the bus" and "I didn't see any blinkers or nothing, no signals, no patrolman, nothing." He said he was then going thirty-five or forty miles an hour, and added: "I thought it wasn't any school that day. That is why I thought I try to pass the bus." A little later, he says when he was twenty-five or thirty feet behind the bus, he was going not forty miles an hour but "slow" and he attempted to pass because he did not want to hit the bus. He did not see the bus make any previous stops, although he had followed it for about a quarter of a mile down the road. He saw no children on the bus. He says he kept

on at the same speed at thirty-five or forty miles an hour after the bus stopped, when according to him the lights went on for the first time, and he maintained that speed until the children were struck, when he put on his brakes.

Appellant claims that Choate was negligent in that he stopped the bus suddenly, without warning, and failed to look in the rear view mirror either before or after stopping to see if a car were approaching at such speed as to make it dangerous to open the door and permit the children to alight, knowing that they would cross the road. We think there was no competent credible evidence to show, or permit a rational inference, that Choate's conduct was other than that of an ordinarily prudent man under the circumstances, or that any act or omission of his caused, or proximately contributed to, the happening of the accident. The greatest distance appellant puts himself behind the bus when it stopped was thirty-five feet, and the lowest rate of speed was thirty-five miles an hour, which continued unabated until the impact. Certainly the bus was no longer than thirty-five feet. At a speed of thirty-five miles an hour, a car travels over fifty-one feet a second. In less than a second and a half, under the testimony most favorable to appellant—less than a second if his other limit figures are used—he would have been past the bus. He would have been past it, in all probability, before the door of the bus could have opened, and in all certainty before the children could have arisen from seats in the middle of the bus, descended the steps, crossed in front of the bus to the left fender and gone into the road, as the uncontradicted and unchallenged testimony shows they did. Appellant says it took him "three or four seconds" to travel sixty to seventy feet going at a speed of from fifty-one feet a second to sixty feet a second. Clearly the number of seconds is wrong, or the distances are wrong, or the rate of speed is wrong, or all are wrong. We think the testimony is too inconclusive, uncertain, vague, incredible and self-contradictory to serve as a rational basis for a finding that Choate was negligent.

*Anne Arundel County v. Vanskiver,* 166 Md. 481; *Askin v. Long,* 176 Md. 545; *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 537; *Olney v. Carmichael,* 202 Md. 226, 231.

Choate says that he does not remember looking in the rear view mirror. Code, 1951, Art. 66½, Sec. 259, requires mirrors permitting a view two hundred feet to the rear. Under the competent and probative testimony, it can only be speculated whether Choate, had he looked, would have seen the car within the two hundred feet range, or at all, before the bus stopped and the door opened to discharge the children. If he had seen the Cadillac at the distance it must have been at the time of the stopping, and opening of the door, he would have been entitled to assume that it would obey the provisions of Code, 1951, Art. 66½, Sec. 224, which require every approaching motorist to come to a full stop at least ten feet from a standing school bus and remain there until the children have been discharged and the school bus has started up. Choate would not have been obliged to anticipate, if he had seen the Cadillac, that it would not comply with the law, stop and remain stopped. We think that the reasoning and holdings of the boulevard stop cases are powerful authorities here. In *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 179, 180, the Court, in holding that the duty imposed by the statute was positive and inflexible, said: "If the duty of stopping and of yielding right of way, is positive and inflexible, the inhibited traveller may know that he violates it at his risk, while the traveller on the favored highway may know that he may safely exercise the privilege of uninterrupted travel thereon which the statute gives." The Court pointed out that there was no implication that "* * * the statute was designed to change the established law of negligence so as to relieve the favored driver of all duty to use care. But in determining due care, the assumption that the unfavored driver will stop and yield the right of way is an important factor." We think the duty of stopping behind a school bus is at least as positive and in-

flexible a duty as that of obeying the boulevard law, and that a school bus driver has the right to assume that it will be obeyed implicitly by cars approaching from the front and rear. If he could not, the operation of the bus would be almost impossible as a practical matter. In *State v. Marvil Package Co.*, 202 Md. 592, another boulevard stop case, the truck driver on the favored highway did not look to his right or left, although if he had looked, he would have seen the lights of the oncoming car which did not stop but continued across and struck the truck. The Court held that there was no actionable negligence on the part of the truck driver and that as a matter of law, nothing that he did or failed to do was a contributory cause of the accident. As pointed out in the cases cited and others, even if the driver who has failed to do so had looked, nothing would be gained, in the ordinary case, since he still would have been entitled to rely on the assumption that the driver of the car whose approach he saw would obey the law and stop. We think the reasoning in these cases controls this case.

A favored driver on a boulevard is not excused from exercising the degree of care required in his environment and neither is a school bus driver. Here we think Choate met this obligation. He pulled the bus to the right side of the road, caused the warning lights to blink, and in the absence of actual knowledge, or requirement to have known, that the statute was to be violated, was entitled to rely on its protection. We find nothing to show that Choate was not justified in allowing the children to descend from the bus to a safe place at the road's edge, as he did, since he knew they were to be shepherded across the road by the safety patrolman, one of whose functions this was. We find that nothing Choate did or failed to do contributed in any way to the accident and that, as between appellant and Choate, the former's negligence was the sole proximate cause of the accident.

There are cases in other States which have required a school bus driver to make sure that the way was clear before allowing children to alight, when he knew that

they would cross a road after doing so. One is *Cart-wright v. Graves* (Tenn.), 184 S. W. 2d 373, relied on heavily by the appellant. It is not clear that the Tennessee statute goes to the lengths of the Maryland statute for there, seemingly, vehicles after coming to a full stop, may, in certain circumstances at least, continue on before the school bus has discharged passengers and started up again. In any event, the *Cartwright case* stressed the tender age of the injured child, who was only six. The opinion distinguished an earlier Tennessee case where the injured child had been eleven. Furthermore, the opinion indicated that the driver of the bus actually saw the oncoming truck and realized, or should have realized, that it was not going to stop and that the child was about to dash across in front of it, unaware of her danger. There was no patrolman or other supervisor of children's safety in that case. In States whose statutes are similar to those of Maryland in requiring motorists to remain standing behind a school bus until the bus has completed discharging children, it has been held that a school bus driver is not under any duty to warn passengers of the danger of approaching automobiles. See *Jordan v. Wiggins* (Ga.), 18 S. E. 2d 512; *Greeson v. Davis* (Ga.), 9 S. E. 2d 690.

We think the judgments must be affirmed.

*Judgments affirmed, with costs.*