GORDY ET AL. *v.* OCEAN PARK, INC.

[No. 14, September Term, 1958.]

54

*Decided October 24, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John L. Sanford, Jr.,* and *Godfrey Child,* with whom were
*Simkins & Simkins* on the brief, for the appellants.

*Marcus J. Williams,* with whom were *Henry P. Walters*
and *Alexander Jones* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

There are but two questions involved in this appeal, and
neither is very difficult to determine. The appellants, who
were plaintiffs below, complain that the trial court (1) re-
fused to instruct the jury that a written statement signed by
one of the appellants' witnesses that had been offered in evi-
dence by the appellee in order to impeach the witness, should
only be considered by the jury as affecting the credibility of
the witness and not as substantive evidence, and (2) declined
to rule as a matter of law that appellants' exhibit 5 was a
valid and enforceable contract of sale.

The appellants are real estate brokers, and the appellee
is the owner of the Ocean Park Motel, located in Ocean City,
Maryland. In July of 1955, (all dates hereafter named are
in 1955 unless otherwise specified) the appellee entered into

an agreement with the appellant, Lynch, whereby Lynch was employed, as agent, to sell the motel to a certain Mrs. Alma Burke for the sum of $350,000. Mrs. Burke did not purchase the same, but suggested that one William A. Carrier might be interested in doing so. During the latter part of August, the appellants took Carrier, as a prospective purchaser, to inspect the motel in the company of Irvin C. Bainum, the president of the appellee. On September 1, Lynch called by telephone and received permission to show the motel to a prospective purchaser and his accountant on the following day. In compliance with this appointment, the appellants arrived at the motel accompanied by Carrier, the prospective purchaser, and the latter's accountant. The accountant spent the day in going over the appellee's books, completing his task at about 3:00 P.M. He concerned himself primarily with the income, operating expenses and maintenance costs, and made no inquiry concerning indebtedness.

There was testimony from which the jury could have found these additional facts. When the accountant concluded his work, he, Carrier and the appellants had a private conference, and, at its conclusion, Lynch informed Bainum that Carrier was willing to purchase the motel for the sum of $350,000, with a $75,000 down payment and the balance payable $25,000 yearly, including interest. Bainum called, and the appellee held, a special meeting of its stockholders (Mr. and Mrs. Bainum owned $2/3$ of appellee's stock; Mrs. Newberry and her brother the other $1/3$ thereof) that same afternoon to discuss the offer. While Bainum was attending this meeting, Carrier signed and left with the appellants, together with a check for the sum of $1,000, the following paper (lacking at that time the appellee's signature):

PLAINTIFFS' EXHIBIT NO. 5

9/2 1955

"Received From William A. Carrier, Purchaser. Residing at 83rd St. and Beach Highway, Ocean City, Md.

The Sum of One Thousand Dollars ($1,000.00).

"As deposit and on account of the purchase price of

premises Ocean Park Motel, complete with the exception of personal belongings, including all improvements and contents therein.

"The purchase price is Three Hundred and Fifty Thousand Dollars ($350,000.00).

Payable as follows:

Cash on signing more formal contract, such as is used by title companies including amount of this deposit

$....................

"Cash on delivery of deed ......$ Seventy Four Thousand Dollars.

"Subject to First mortgage of $275,000.00 at 5% expiring, ............ Payable—Twenty Five Thousand per year including interest.

"Purchaser to have right of anticipation of payments.

"Subject to clear title—deposit to be refunded in the event of defect in title.

"The deed shall be delivered on the ........ day of .......... at ......M. at ..................

\* \* \*

"If offer is accepted, more formal contracts shall be signed by the purchaser and the seller on the ...... day of ........ 19.... at ............

"Owner recognizes Elizabeth Gordy and C. E. Lynch as the brokers who brought about the sale and agrees to pay Five per cent of the purchase price as commission.

"The above deposit has been received by me the owner of record of said premises, and the terms and conditions set forth hereon are acceptable to me.

OCEAN PARK, INC.
IRVIN C. BAINUM, Pres. Owner.
MARY NEWBERRY,
Secretary Treasurer.

Witness:

Evea Bainum

I, the undersigned, purchaser
of the above described premises,
agree to the terms set forth hereon.

WILLIAM A. CARRIER,
Purchaser."

The indebtedness against the appellee Corporation on September 2nd was, approximately, $174,000. The stockholders, at their meeting, decided that Carrier's offer would be accepted only if he would agree to assume a $98,000 first mortgage and certain furniture payments aggregating $26,000 which had to be paid within three years. If this were done, the stockholders agreed that they would accept a second mortgage, payable $25,000 per year, for the balance.

At the conclusion of the stockholders' meeting, Bainum returned to the room being occupied by the appellants, and learned that Carrier had left. The appellants showed him the check and the paper that Carrier had signed. Bainum informed the appellants that Carrier would have to assume the mortgages, because the appellee could not pay them off. Lynch informed Bainum that the purchaser would assume the mortgages, but this did not satisfy Bainum, who insisted that the provision concerning the assumption by the purchaser of the mortgages be inserted in the paper writing. Lynch then replied: "No, no, we can't put it in above Carrier's signature. Look right here, this is just to tide it over to Monday morning. The lawyers will all get together and work it out, all the details." After this assurance, Bainum signed the paper, plaintiffs' exhibit 5.

Bainum and the appellants then went down to the motel lobby where they met Mrs. Newberry and Mrs. Bainum. After reading the paper, Mrs. Bainum asked: "Where is it about assuming the mortgages?" Lynch replied: "This is just to tide it over to Monday. It is just a memo," and informed her that the lawyers would work out all the details. After this assurance, Mrs. Bainum witnessed the instrument.

58

When Mrs. Newberry read the paper, she noted that no date was named therein, and was informed by Lynch that exhibit 5 was "just informal" and that more "formal contracts" would be signed and the "thing worked out later."

On September 6, Carrier, his attorney, the appellants, officers of the appellee and its attorney met for the purpose of preparing "more formal contracts." Carrier informed the officers of the appellee that he would not assume the first mortgage or the furniture payments, and there was no other instrument prepared or executed, as the parties were unable to agree upon the terms.

The appellants brought suit against the appellee for their allegedly earned commission, and a jury trial resulted in a verdict for the appellee. From a judgment entered on this verdict, the appellants have appealed.

I

At the trial below the appellants called Carrier as their witness. After the purported contract, plaintiffs' exhibit 5, had been offered in evidence, he testified, in an apparent effort to show that the exhibit was a valid and enforceable contract, that he "thought the sale was consummated," that he "thought he had bought the motel," but the appellee refused the down payment. The appellee defended the suit upon the theory that the purported contract, though signed by the parties, never was intended to be a contract and, in fact, never was a contract. In order to impeach the above testimony of Carrier, the appellee, on cross-examination, proffered an agreement between Carrier, Mr. Bainum and the appellee, dated September 29, 1955. This agreement, for a consideration, released Bainum and the appellee from any claims that Carrier might have as a result of the purported sale of the motel not having been actually consummated. It is of considerable length, so only pertinent excerpts therefrom will be quoted. They are as follows:

\* \* \*

"WHEREAS, on September 2, 1955, the said William A. Carrier and Irvin C. Bainum (acting for and on behalf of Ocean Park, Incorporated), en-

tered into an alleged agreement whereby Carrier purportedly agreed to purchase from Ocean Park, Incorporated, and the latter purportedly agreed to sell to the former, the Ocean Park Motel, at and for a stipulated total price of Three Hundred Fifty Thousand Dollars ($350,000.00) ; and

"WHEREAS, serious discrepancies and errors of omission exist in the alleged agreement, as a result of which that there was actually no binding agreement and no meeting of minds between the parties thereto as to the terms and conditions thereof; and * * *"

The appellants objected to the admissibility of this exhibit, but the court admitted it for the purpose of impeaching the witness.

At the conclusion of the taking of testimony, the appellants requested an instruction from the court informing the jury that they could only consider this exhibit for the purpose of evaluating the credibility of the witness, Carrier, and not as substantive evidence. This the court refused to do, and seasonable exception was taken thereto. Under the previous rulings of this Court, there is little doubt that, ordinarily, the appellants would have been entitled to such an instruction. *De Sobry v. De Laistre,* 2 Harris & J. 191, 220; *Mason v. Poulson,* 43 Md. 161, 176, 177; *State v. Baltimore Contracting Co.,* 177 Md. 1, 15, 6 A. 2d 625; *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 361, 362, 121 A. 2d 188.[1] See also *Baltimore & O. R. Co. v. Rambo,* 59 F. 75 (C.C.A. 6th). However, the appellants offered on their own behalf and had admitted into evidence an identical copy of the defendant's exhibit. It was proffered by them generally and not for any stated or limited purpose. The reasons why the appellants offered this exihibit, after objecting so strenuously when proffered by the appellee, are not easily or readily understood, but the fact remains that they did so, and the exhibit was in evidence, without objection, as a result of their introduction. How, then, can the appellants complain that the court refused to limit the scope of the jury's consideration

---

1. There are many other Maryland cases on this point.

60

thereof? The exhibit was certainly not admissible on behalf of the appellants for the limited purpose of impeaching their own witness. No surprise was claimed or shown. We have held on many occasions that evidence which may be open to objection, but which is admitted without objection, has the force and effect of proper evidence. An illustration of such a ruling is found in *Todd v. Ferrell,* 212 Md. 574, 580, 130 A. 2d 581. Surely, therefore, the appellants, after introducing evidence without any limitation upon the purposes for which it is offered, cannot require the court to instruct the jury to *limit* their consideration thereof to a purpose for which the evidence would not have been admissible on their behalf. We find no error in the court's ruling upon this point.

## II

The appellants excepted to the trial court's refusal to rule as a matter of law that their exhibit No. 5 was a valid and enforceable contract and to so instruct the jury. As stated above, the appellee defended the case upon the theory that exhibit No. 5 never was intended to be a contract and was therefore, in fact, never a contract. The appellants, however, contend that it is the duty of the court to ascertain and declare the intention of the parties as expressed in the contract, and that the construction of written documents is a question of law for the courts. That, as a general rule, the construction or interpretation of all written instruments is a question of law for the court is a principle of law that does not admit of doubt. *Roberts & Co. v. Bonaparte,* 73 Md. 191, 199, 20 A. 918; *Hartsock v. Mort,* 76 Md. 281, 291, 25 A. 303; *Strickler Eng. Corp. v. Seminar,* 210 Md. 93, 100, 122 A. 2d 563; *Sperling v. Terry,* 214 Md. 367, 370, 135 A. 2d 309. However before the court can construe a contract, there must exist a contract; and, if it be claimed that an instrument of writing, although in form a complete agreement, was not intended by the parties to be binding upon them, the question as to whether or not the instrument was so intended is one for the jury. *Southern Adv. Co. v. Metropole Co.,* 91 Md. 61, 46 A. 513; *Birely & Sons v. Dodson,* 107 Md. 229, 235, 68 A. 488; *Peoples Drug Stores v. Fenton,* 191 Md. 489, 62 A. 2d 273.

The case of *Colonial Park v. Massart,* 112 Md. 648, 77 A. 275, is, factually, quite similar to the case at bar. In that case, a development company had certain lots for sale. A Mr. Massart became interested and visited the property, which was shown to him by one McCoy, the selling agent of the company. Massart made a verbal offer for several lots, and, after consultation with the president of the selling company, the offer was accepted and McCoy requested a down payment. Massart, however, insisted upon seeing the kind of contract that he would be required to sign; whereupon McCoy produced and showed him a printed blank form of contract containing quite a number of provisions and restrictions. Massart went over the blank form and after discussing certain of its provisions with McCoy, who promised to bring it to him the next day to sign, expressed himself as satisfied and paid the down payment.

When the payment was made, McCoy filled up and handed to Massart a written instrument, which Massart claimed he thought was a receipt. Massart signed the same and it was signed "offer accepted" by the president of the company.

On the next day, McCoy took to Massart, for signature, a formal contract for the purchase of the lots, which he refused to sign claiming that it contained material provisions different from the form shown him on the previous day.

Massart sued the company for a return of his deposit, and it defended on the ground that the written instrument signed by Massart was a sufficient memorandum of sale and parol evidence was inadmissible to vary its terms. This Court stated (at page 655):

> "* * * we think that if the money was paid by him (Massart) as he testified that it was under the distinct understanding that the sale was to be made upon the terms set out in the printed form of contract then given to him and further that a contract therefor upon those terms was to be furnished him for execution on the following day, the paper which he signed should not be regarded as a binding memorandum of a contract of sale of the lots.

> "Although parol evidence is inadmissible to vary or contradict the terms of a written agreement, it is well settled that such evidence is admissible to show that a particular written paper 'was never intended as a contract as the binding record of a contract between the parties.'"

The rule in the federal courts is the same. During the course of its opinion in *Burke v. Dulaney,* 153 U. S. 228, 234, the Supreme Court said:

> "The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But the rule has no application if the writing was not delivered as a present contract. The authorities supporting these views are numerous, and to some of them it will be well to refer."

We think the trial court was correct in submitting to the jury the question as to whether or not exhibit No. 5 was intended to constitute a contract between the parties, and in refusing to rule as a matter of law that it was a valid and enforceable agreement.

*Judgment affirmed, with costs.*